HARRY D. AUSTRIAN, PLAINTIFF AND DEFENDANT IN
    ERROR, v. JULIUS LAUBHEIM, DEFENDANT AND
    PLAINTIFF IN ERROR.

Argued February 16, 1909—Decided June 7, 1909.

When a defendant has been held to bail in an action of contract on
    affidavits showing fraud in the inception of the contract sued on,
    and on the trial the fraud is inquired into pursuant to .section
    166 of the Practice act of 1903, the issue of fraud is for the de-
    termination of the judge, and the burden is on the defendant of
    proving absence of fraud.

On error to Circuit Court, Hudson county.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE
and PARKER.

For the plaintiff in error, *Alexander Simpson*.

The opinion of the court was delivered by

PARKER, J.   The plaintiff in error, defendant below, was
held to bail on the ground of fraud in the inception of the
contract sued on.   There was a judgment for plaintiff and a
special finding by the jury that the defendant fraudulently
contracted the debt to recover which the suit was brought.
The assignments of error relate exclusively to the inquiry on
the trial into the fact of fraud.   The first point is that the
court excluded as evidence the bank pass-book of defendant's
firm, which was offered to show a deposit at a certain time.
The book was clearly incompetent for that purpose.

The next assignment challenges the refusal of the court to
allow a witness to state how often a certain messenger boy had
been in defendant's office.   This was excluded as immaterial,
and we think it was, but if there was any error in its exclu-
sion, it was cured by the witness immediately afterward stat-
ing without objection that the boy had been there "hundreds
of times."

It is further assigned for error that the court overruled this question: '

"*Q.* Do you know whether or not, on the 24th or 25th of October, Mr. Laubheim had reasonable foundation for supposing that he was worth $15,000 or $20,000 ?"

This was properly overruled, the answer being necessarily a conclusion of the witness. Counsel then said: "Your honor will not allow us to show proof that he was about to let him have the money?" and the court responded: "No." To this last ruling no exception was taken.

Plaintiff's evidence tended to show that a check was handed by plaintiff to defendant in Jersey City at noontime between twelve and one o'clock; other evidence showed that this check was deposited in Jamaica, Long Island, the same day, at one thirty-five. Defendant undertook to show by a witness who made the journey from New York to Jersey City, and thence to Jamaica, that it could not be done in this time, and asked, "Now, what time did you start; what time did you leave New York side?" This was overruled as immaterial, and properly so, as the journey from New York to Jersey City was not part of that under inquiry, and the time of leaving New York was not of the slightest consequence.

The remaining assignments of error that are ruled on relate to refusals to charge as requested on the question of fraud, and can be disposed of on one ground, which is that the submission of the question of fraud to the jury at all was unwarranted in law, and as this was done at defendant's request, any errors of the court resulting from this action are of defendant's making.

The inquiry as to fraud was held pursuant to section 166 of the Practice act of 1903, which reads as follows:

"If the defendant in an action upon contract has been held to bail upon the ground of fraud in the inception of the contract, it shall be lawful on the trial of the action to inquire into the fact of such fraud; and if the judge on the trial shall determine from the evidence and certify upon the record that there was no such fraud, then the defendant's bail shall be

discharged or he shall be released from custody and no *capias ad satisfaciendum* shall be issued against him."

This statute on its face seems to require the judge, and not the jury, to determine the question of fraud, and to impose the burden of proving absence of fraud on the defendant. The history of the legislation on the subject will confirm this view.

Previous to the act of 1842, page 130, imprisonment for debt was in force in this state irrespective of fraud. That act was substantially identical with sections 57 and 189 of our Practice act of 1903, except that it omitted the fraudulent contracting of the debt or incurring of the demand as a cause for arrest, and did not include the important provision which we find as section 3 of "An act respecting imprisonment for debt in cases of fraud" (*Rev. Stat.* 1847, *p.* 322), as section 213 of the Practice act of 1874 and as part of section 189 of the act of 1903, that when a preliminary order to hold to bail has been made and remains in force, the plaintiff may have his *ca. sa.* on recovery of judgment without further proof. The constitution of 1844, article 1, placitum 17, provided that "no person shall be imprisoned for debt in any action nor on any judgment founded on contract, unless in case of fraud," and this provision has stood unchanged till the present day, and in 1846 Chief Justice Hornblower, speaking for this court, declared that "it is left, however, for the legislature to say what shall be deemed such fraud, as shall make a man liable to imprisonment, and how it shall be proved in order to justify the arrest of the debtor." *Ex parte Clark, Spen.* 648, 650. The act of 1842 was held applicable except so far as repugnant to the constitution (*Hill* ads. *Hunt, Id.* 476, 478), and was adopted in the revision of 1846 with the addition of the fourth ground of arrest and the provision for *ca. sa.* without additional proof already noted. In this form the law has stood unchallenged and unchanged, with one exception, till the present time. Under its provisions and as a matter of practice the right to *ca. sa.* followed the judgment as, of course, in all cases of debt where preliminary order of

arrest had been made. And it is obvious that on the trial proof of the debt was all that was required; in fact the statute expressly so provided. *Rev., p.* 881, § 213.

The exception just noted is the act of 1877, page 112, being a supplement to the Practice act of 1874 (*Rev., p.* 896, *pl.* 305), and embodied in the act of 1903 as section 166. ·

The act as passed in 1877 provided "that when any defendant * * * in any action upon contract has been held to bail upon preliminary affidavits upon the ground of fraud in the inception of the contract, it shall be lawful, upon the trial of said cause, to inquire into the fact of said fraud; and if it shall appear on said trial that there was no fraud on the part of the defendant or defendants in the inception of said contract, then there shall not issue in said action a body execution; and the judge or justice presiding at the trial of said cause shall determine from the evidence and certify upon the record whether said fraud was proved or not."

It may well be argued that the language of the last clause imposed on the plaintiff the burden of proving fraud at the trial to entitle him to a *ca. sa.* to enforce his judgment, but the change made in the revised act of 1903 is significant. Section 166 of the Practice act, the one now in force, omits the last clause altogether, and for the clause "if it shall appear on said trial that there was no such fraud," &c., the present section says "and if the judge on the trial shall determine from the evidence and certify upon the record that there was no such fraud, then the defendant's bail shall be discharged or he shall be released from custody and no *capias ad satisfaciendum* shall issue against him." It is therefore evident that the old rule, if ever broken in upon by the act of 1877, was restored by the revision of 1893, and that a plaintiff who has held a defendant to bail for fraud in the inception of the contract is entitled as, of course, to a *ca. sa.* in execution of any judgment he may recover in the action, unless the defendant on the trial sustains the burden of showing absence of fraud, and that this question, when raised, is for the judge and not for the jury.

It follows that the submission of the question of fraud to the jury was unwarranted in law, and this being so, no harm was done to defendant by the manner in which it was submitted. We find in the record no request to the trial judge to adjudicate the issue of fraud. The submission of that issue to the jury was nugatory and the finding of the jury as returned in the record is mere surplusage.

The judgment will be affirmed.